IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KARREN TONY UGLUNTS, et al., | § | |
| | § | |
| Plaintiffs-counterdefendants, | § | |
| | § | Civil Action No. 3:12-CV-4388-D |
| VS. | § | |
| | § | |
| AMERICARE SERVICES, INC., et al., | § | |
| | § | |
| Defendants-counterplaintiffs. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed case, the court must decide whether defendant has established by a preponderance of the evidence that the court had diversity jurisdiction when this case was filed in state court and removed to this court. Concluding that defendant has not met this burden, the court remands the case to state court.

I

Plaintiffs Karren Tony Uglunts ("Uglunts"), Valdimir Krupin ("Valdimir"), and Marianna Krupin ("Marianna") are former employees of defendant Americare Services, Inc. ("Americare"), a Nevada corporation. Plaintiffs, each a Texas citizen, brought suit in Texas state court against Americare and Edward Mandel ("Mandel"), who at all relevant times was Americare's Chairman of the Board. Americare and Mandel removed the case to this court based on diversity of citizenship and moved to transfer the case to the Southern District of Florida. When reviewing filings related to the transfer motion, the court determined that certain filings cast doubt on whether there was complete diversity of citizenship. The court

directed Americare to file a written response establishing subject matter jurisdiction, "supported by competent evidence, that shows its state of incorporation and the state in which its principal place of business was located at the time of removal and is now located." Apr. 30, 2013 Order at 3.[1]  The court also permitted plaintiffs to file a response and Americare to file a reply.  The briefing has concluded, and the issue is now ripe for decision.

II

Federal courts have diversity jurisdiction when the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* 28 U.S.C. § 13329(a); *Breaux v. Dilsaver*, 254 F.3d 533, 536 (5th Cir. 2001).  "[W]hen the alleged basis for jurisdiction is diversity of citizenship, the district court must be certain that the parties are in fact diverse before proceeding to the merits of the case." *Getty Oil Corp. v. Ins. Co. of Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988) (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548-49 (5th Cir. Unit A Dec. 1981)).  "If the case involves more than one plaintiff and more than one defendant, the court must be certain that all plaintiffs have a different citizenship from all defendants."  *Id.* (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)) (explaining the requirement of complete diversity).  "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction."  *Id.* at 1259 (citing *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th

---

[1] Plaintiffs voluntarily dismissed their action against Mandel, and the court dismissed him as a defendant on April 16, 2013, before the court directed Americare to establish the court's subject matter jurisdiction.

Cir. 1986)). "Federal courts are courts of limited jurisdiction. [A court] must presume that a suit lies outside this limited jurisdiction[.]" *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (citation omitted).

Because the court required Americare to go beyond the allegations of the notice of removal and establish subject matter jurisdiction with evidence, the court evaluates this issue as it would when deciding a factual attack on jurisdiction made under Fed. R. Civ. P. 12(b)(1). *See Jones v. SuperMedia, Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.) ("When a factual attack has occurred, to establish jurisdiction, the plaintiff must respond by submitting facts through some evidentiary method.") (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "Jurisdictional matters are to be decided by the court, although the court may, in its discretion, submit to the jury contested factual issues involving the presence of diversity of citizenship, to be used as an advisory determination." *Coury*, 85 F.3d at 249 (citing *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d 705 (5th Cir. 1967)). "The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Id.* at 249 (citing *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081 (5th Cir. 1975)). The removing party has the burden of proving jurisdiction "'by a preponderance of the evidence.'" *Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (quoting *Paterson*, 644 F.2d at 523).

III

The dispositive question is whether Americare has carried its burden of establishing by a preponderance of the evidence that, at the time the case was filed in state court and at the time of removal, its principal place of business was located in a state other than Texas.

A

Section 1332 does not define "principal place of business," making the phrase "more difficult to apply than its originators likely expected." *Hertz Corp. v. Friend*, 559 U.S. 77, 89 (2010). This led courts to adopt and apply different tests for different factual situations to determine a corporation's principal place of business. *See, e.g., Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959) (applying "nerve-center test" where corporation's activities were diffuse); *Diaz-Rodriguez v. Pep Boys Corp.*, 410 F.3d 56, 60-61 (1st Cir. 2005) (applying "business activity" test where corporation's activities were limited to a few states); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 162-63 (6th Cir. 1993) (combining the "nerve center" and "business activity" tests to look to a corporation's "total activities"). The Supreme Court cleared up the confusion in *Hertz*. It held:

> "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz*, 559 U.S. 92-93.  Lower courts interpreting *Hertz* have thus concluded that a corporation's citizenship is determined by examining where its high-level officers direct, control, and coordinate the corporation's activities.  *See, e.g., Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 107 (4th Cir. 2011); *Lewis v. Lycoming*, 2012 WL 2422451, at *5 (E.D. Pa. June 27, 2012)*; Vision Bank v. Dynamic Air, Inc.*, 2011 WL 1475939, at *5-6 (S.D. Ala. Mar. 30, 2011), *rec. adopted*, 2011 WL 1475918, at *1 (S.D. Ala. Apr. 15, 2011).

B

Americare has adduced a declaration from Mandel, who has served either as the Chief Executive Officer ("CEO"), the Chairman of the Board of Americare, or both since December 2011.  Mandel avers that Americare's "corporate headquarters and principal place of business . . . is at 20100 NE 30th Ave., Suite 200, Aventura, Florida[.]"  D. App. 1-2.  He states that this has been the principal place of business since January 1, 2012, and that it has been the place of work for himself and Irene Mandel, Americare's Chief Financial Officer ("CFO"), as well as the "place of work for meetings and business development for the company during that entire time."  *Id.* at 2.  At some unspecified time after January 2012, Jack Esselen was CEO, but he resided in Rhode Island.  Mandel nonetheless maintains that Florida has remained the principal place of business, and he cites a document from the Florida Department of State Division of Corporations showing that the "principal address" of Americare is in Florida.  *Id.*  Aside from these statements intended to prove that Americare's principal place of business has been in Florida since January 2012, Mandel also

addresses why the principal place of business is not Plano, as plaintiffs contend. He avers that the Plano office of Americare was closed on or about June 10, 2012 due to a dispute with the landlord, *id.* at 2-3, and that, although Americare opened a new office in Plano sometime in July, it is a small room in an executive suite used only as "a limited, part time 'on demand' business meeting place for one of the company's contractors," *id.* at 3.

Plaintiffs respond that, contrary to Mandel's declaration, Americare's principal place of business is in Plano, Texas. They offer as evidence the declaration of Uglunts, Americare's former Executive Vice President of Sales. Uglunts avers that she, Valdimir (Americare's former Chief Operating Officer ("COO")), and Marianna (Americare's former Chief Information Officer ("CIO")) all remained based in the Plano office, despite the fact that Mandel moved to Florida. Further, she avers that, from March 2011 to June 2012, there were no Americare employees, and no functioning Americare offices, located in south Florida. Plaintiffs also attach photographs of Americare's name on a lobby directory in an office building in Plano. Valdimir avers that he has seen a major shareholder at this location and that a receptionist told him that "Americare has an operations and finance department that are functioning" at the Texas location. Ps. App. 16. Plaintiffs also present evidence to discredit Mandel's statements that Americare is operating from Florida offices. They attach the transcript from a motion hearing in Texas state court in which an attorney stated that a receiver's attorneys[2] went to Americare's facilities in Florida in early 2013 because Mandel

---

[2]It is not clear from the evidence the context of the suit.

had represented in court filings that books and records of Americare were located at that location in Florida, but that they discovered only an "empty office with a power cord and a printer on the ground and nothing else." Ps. App. 11.  Mandel denies that this occurred. Plaintiffs also include a printout of the website for the company leasing Americare office space in Florida, contending that the office is merely an executive suite that, in plaintiffs' apparent estimation, is too small to run Americare.  Uglunts also avers that Mandel stated that he did not feel that he needed an office in the Miami area because he could instead work out of a Marriott hotel lobby near his personal residence.

C

Americare has failed to establish by a preponderance of evidence that its principal place of business was located in Florida at the time this case was filed in state court and removed to this court.  The only evidence that Americare has produced that shows that its "nerve center" was in Florida is Mandel's statement that the office space in Florida "has been my place of work and place of work of Irene Mandel, Company CFO[,] as well as the place of work for meetings and business development for the company [since January 1, 2012]." D. App. 2, ¶ 7. At the same time, it is uncontested that Americare's COO and the CIO both worked from Plano, and that Americare's CEO resided in Rhode Island during part of the time that Americare asserts that its principal place of business was in Florida.  All officers need not work in the same location for that location to be the corporation's principal place of business.  *See Health Facilities of Cal. Mut. Ins. Co. v. British Am. Ins. Grp., Ltd.*, 2011 WL 97695, at *2-3 (C.D. Cal. Jan. 11, 2011) (suggesting that corporation's principal place

of business was where President and Director worked, despite fact that several officers worked elsewhere). In fact, in *Balachander v. AET Inc.*, 2011 WL 4500048 (S.D. Tex. Sept. 27, 2011), the court concluded that the defendant corporation's principal place of business was in Kuala Lumpur, Malaysia, where the CEO and CFO worked, even though many other officers worked from Houston. *Id.* at *7. But in *Balachander* the court was presented with evidence establishing that the isolated CEO and CFO made the key decisions. There was evidence that the CEO and CFO set the corporation's budget and made the decisions that set the corporation's policies and direction. *Id.* The CEO was required to approve leases lasting over one year and to hire or fire employees at the senior-vice-president level or higher. *Id.* As the court stated, "[t]he fact that high-ranking members of the Houston office regularly turn to [the CEO in Kuala Lumpur] for approval and must do so for high-level hiring decisions and significant contracts points to a single location in Kuala Lumpur as the 'corporate brain' of [the corporation]." *Id.* Conversely, in *Health Facilities* the plaintiff, who was the party seeking to invoke the court's jurisdiction, could only show that multiple directors lived in California and that board meetings were sometimes held there; the plaintiff did not prove that there was a single place for direction, control, and coordination in California. *Health Facilities*, 2011 WL 97695, at *3-4.

All Americare has shown is that, since January 1, 2012, its CEO and/or Chairman of the Board (Mandel) and its CFO (Irene Mandel) worked and conducted business

development in Florida.[3] During a large portion of this time, however, Americare's COO and CIO were located in Plano, Texas, a place to which Mandel often travels,[4] and at some points in time the CEO was in Rhode Island. Although Americare correctly points out that the circumstances just described occurred prior to when plaintiffs filed this lawsuit and when defendants removed the case to this court, it is incorrect that this means that these facts should not be considered. These uncontroverted facts prevent the court from accepting Mandel's averment that, *from January 1, 2012*, Aventura, Florida has been Americare's principal place of business. Other than this assertion, Americare has not provided sufficient proof to show by a preponderance of the evidence that, after the COO and CIO who were located in Plano left the company, the nerve center shifted to Florida. It is Americare's burden, as the party seeking to invoke this court's subject matter jurisdiction, to establish complete diversity by a preponderance of the evidence, and it has not done so.

\* \* \*

For the reasons explained, the court concludes that it lacks subject matter jurisdiction

---

[3]Although Americare also relies on a document from the Florida Department of State, Division of Corporations listing its principal address as in Florida, such corporate filings are alone insufficient to show the actual place of business. *See York Grp. v. Pontone*, 2012 WL 3127141, at \*16 (W.D. Pa. July 31, 2012) ("Following *Hertz*, courts have specifically rejected corporate reports, tax filings, and corporate-registration statements as being evidence sufficient to demonstrate a corporation's principal place of business.") (citing *Ballard v. Union Carbide Co.*, 2011 WL 4597349, at \*2-3 (S.D. W.Va. Oct. 3, 2011); *Balachander*, 2011 WL 4500048, at \*8-9).

[4]Although Mandel's travels may in part be because of a personal bankruptcy case in Texas, Krupin avers that these trips are, "in part, to manage Americare." Ps. App. 2.

and, pursuant to 28 U.S.C. § 1447(c), remands this case to the 116th Judicial District Court of Dallas County, Texas. The clerk of court shall effect the remand according to the usual procedure.

**SO ORDERED.**

July 23, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 10 -